## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON DIVISION

**THE CITY OF CRYSTAL SPRINGS**                           **PLAINTIFFS**

**V.**                        **CIVIL ACTION NO.  3:12cv611 TSL-MTP**

**BORG WARNER, INC.; KUHLMAN**
**CORPORATION; KUHLMAN ELECTRIC**
**CORPORATION; KEC ACQUISITION**
**CORPORATION; DAVID RODGERS AND**
**L M & R SERVICE, INC.; JOHN DOES 1-10;**
**AND UNIDENTIFIED IDENTITIES 1-10**          **DEFENDANTS**

---

## ANSWER, DEFENSES AND CROSS-CLAIM OF
## DEFENDANTS KUHLMAN ELECTRIC CORPORATION
## AND KEC ACQUISITION CORPORATION
## (JURY TRIAL REQUESTED)

---

COME NOW Defendants Kuhlman Electric Corporation ("KEC") and KEC Acquisition Corporation ("KAC"), by and through counsel, and file this Answer and Defenses to Plaintiff's Complaint ("Complaint").  KEC and KAC affirmatively allege and aver that Plaintiff's claims against KEC and KAC are subject to and barred by the following defenses:

### First Defense

Plaintiff's Complaint fails to state a claim against KEC and/or KAC upon which relief can be granted.

### Second Defense

Plaintiff has failed to exhaust its administrative remedies.

### Third Defense

Any injuries or damages allegedly sustained by Plaintiff were caused by the negligence or misconduct of others for whom KEC and KAC are not legally responsible, and such negligence or misconduct of others constitutes an intervening and superseding cause of Plaintiff's alleged injuries or damages. Alternatively, the negligence or misconduct of others proximately contributed to the alleged injuries or damages of Plaintiff, and fault should be allocated pursuant to Miss. Code § 85-5-7.

### Fourth Defense

Plaintiff has failed to mitigate its damages, if any.

### Fifth Defense

Plaintiff's claims are barred by applicable statutes of limitations and/or statutes of repose and/or laches.

### Sixth Defense

With respect to punitive damages, any consideration of financial condition of a defendant violates the due process and/or equal protection clauses of the United States and Mississippi Constitutions; any award of punitive damages must comply with substantive due process pursuant to the Mississippi and United States Constitutions.

### Seventh Defense

Some or all of Plaintiff's claims and/or damages are barred by the doctrines of waiver and estoppel.

### Eighth Defense

Any judgment or verdict rendered against KEC and/or KAC should be reduced by the amount of any settlement or payment to Plaintiff or benefit received by Plaintiff for the same alleged injuries or damages.

### Ninth Defense

Some or all of Plaintiff's claims may be preempted by federal statutory or regulatory law.

### Tenth Defense

KEC and KAC would show that Plaintiff has been paid or, alternatively, that any relief to which it is entitled has been satisfied.

### Eleventh Defense - Answer

KEC and KAC answer, paragraph by paragraph, the allegations of the Complaint to the extent to which those allegations apply to KEC and/or KAC as follows:

1.      KEC and KAC deny the allegations in the Summary of the Complaint and in Paragraph 1 of the Complaint, except to admit that Plaintiff is a municipality in Copiah County, Mississippi.

2.      On information and belief, KEC and KAC admit the allegations of Paragraph 2 of the Complaint.

3.      KEC and KAC deny the allegations of Paragraph 3 of the Complaint, except to admit that Plaintiff provides municipal water supply to the City's residences and businesses and that, on information and belief, Municipal Well No. 7 was shut down.

4.      KEC and KAC are without information or knowledge sufficient to form a belief as to the allegations of Paragraph 4 of the Complaint and deny the same.

5.      KEC and KAC are  without information or knowledge sufficient to form a belief as to the allegations of Paragraph 5 of the Complaint and deny the same.

6.      KEC and KAC admit the allegations of Paragraph 6 of the Complaint.

7.      KEC and KAC admit the allegations of Paragraph 7 of the Complaint.

8.      KEC and KAC are without information or knowledge sufficient to form a belief as to the allegations of Paragraph 8 of the Complaint and deny the same.

9.      KEC and KAC are without information or knowledge sufficient to form a belief as to the allegations of Paragraph 9 of the Complaint and deny the same.

10.      KEC and KAC are without information or knowledge sufficient to form a belief as to the allegations of Paragraph 10 of the Complaint and deny the same.

11.      KEC and KAC are without information or knowledge sufficient to form a belief as to the allegations of Paragraph 11 of the Complaint and deny the same.

12.      KEC and KAC admit that this Court has jurisdiction over the parties, and deny the other allegations of Paragraph 12 of the Complaint.

13.     KEC and KAC are without information or knowledge sufficient to form a belief as to the allegations of Paragraph 13 of the Complaint and deny the same.

14.     KEC and KAC are without information or knowledge sufficient to form a belief as to the allegations of Paragraph 14 of the Complaint and deny the same.

15.     KEC and KAC admit that this Court has jurisdiction, and deny the other allegations of Paragraph 15 of the Complaint.

16.     KEC and KAC admit that venue is proper in Copiah County, and that BorgWarner is KEC and KAC's indemnitor for any environmental contamination at issue in this action.  KEC and KAC have no knowledge or information sufficient to respond to the allegations of Paragraph 16 as to Defendants Rodgers and L M & R and therefore deny the same.  KEC and KAC deny all other allegations of Paragraph 16 of the Complaint.

17.     KEC and KAC are without information or knowledge sufficient to form a belief as to the allegations of Paragraph 17 of the Complaint and deny the same.

18.     KEC and KAC admit the allegations of Paragraph 18 of the Complaint.

19.     KEC and KAC admit the allegations of Paragraph 19 of the Complaint.

20.     KEC and KAC deny the allegations of Paragraph 20 of the Complaint as stated, except to admit that BorgWarner and Kuhlman Corporation have provided KEC, KAC and their affiliates with an indemnity covering liabilities associated with environmental matters as set forth in the agreement by which KEC was sold.  KEC and KAC admit that BorgWarner purchased Kuhlman Corporation, KEC's former parent corporation, and that BorgWarner

and/or Kuhlman Corporation then sold the stock of KEC to a third party, KEC Acquisition Corporation, as set forth in the agreement by which KEC was sold.

21.     KEC and KAC admit that KEC manufactured electrical transformers at this site, and deny the remaining allegations of Paragraph 21 of the Complaint.

22.     KEC and KAC deny the allegations of Paragraph 22 as stated, except to admit that KEC has manufactured transformers.  KEC specifically denies that PCB-containing transformer oils have been used by it since the 1950s.

23.     KEC and KAC deny the allegations of Paragraph 23 of the Complaint except to admit that from approximately 1954 until approximately 1976 KEC purchased transformer oils.

24.     Paragraph 24 contains no allegations against KEC or KAC, and to the extent any such allegations are intended, KEC and KAC deny the allegations of Paragraph 24.

25.     Paragraph 25 contains no allegations against KEC or KAC, and to the extent any such allegations are intended, KEC and KAC deny the allegations of Paragraph 25.

26.     KEC and KAC deny the allegations of Paragraph 26 of the Complaint.

27.     As to the allegations against parties or non-parties other than KEC, KEC and KAC are without sufficient information or belief to answer the allegations of Paragraph 27 of the Complaint and therefore deny the same.  KEC also denies the allegations against it stated in Paragraph 27 of the Complaint.

28.     KEC and KAC deny the allegations of Paragraph 28 of the Complaint.

29.     KEC and KAC deny the allegations of Paragraph 29 of the Complaint.

30.     KEC and KAC deny the allegations of Paragraph 30 of the Complaint.

31.     KEC and KAC deny the allegations of Paragraph 31 of the Complaint.

32.     KEC and KAC deny the allegations of Paragraph 32 of the Complaint.

33.     KEC and KAC deny the allegations of Paragraph 33 of the Complaint.

34.     KEC and KAC deny the allegations of Paragraph 34 of the Complaint.

35.     KEC and KAC deny the allegations of Paragraph 35 of the Complaint, and KEC specifically denies the characterization of the ATSDR document which speaks for itself.

36.     KEC and KAC deny the allegations of Paragraph 36 of the Complaint, except to admit that, on information and belief, BorgWarner's sampling has revealed the presence of 1, 4 dioxane in groundwater at or near the KEC facility.

37.     KEC and KAC admit that BorgWarner maintained control over remediation of the KEC facility and the impacted area pursuant to indemnification terms between BorgWarner and KEC. KEC and KAC are without sufficient information or belief to answer the other allegations of Paragraph 37 of the Complaint and therefore deny the same.

38.     Paragraph 38 contains no allegations against KEC or KAC. KEC and KAC are without sufficient information or belief to answer the allegations of Paragraph 38 of the Complaint and therefore deny the same.

39.     KEC and KAC admit David Rodgers and/or L M & R were independent contractors to KEC, but deny all other allegations of Paragraph 39 of the Complaint.

40.     KEC and KAC deny the allegations of Paragraph 40 of the Complaint.

41.     KEC and KAC deny the allegations of Paragraph 41 of the Complaint.

42.     KEC and KAC re-adopt their responses to Paragraphs 1 through 41 above.

43.     KEC and KAC deny the allegations of Paragraph 43 of the Complaint.

44.     KEC and KAC deny the allegations of Paragraph 44 of the Complaint.

45.     KEC and KAC deny the allegations of Paragraph 45 of the Complaint.

46.     KEC and KAC deny the allegations of Paragraph 46 of the Complaint.

47.     KEC and KAC deny the allegations of Paragraph 47 of the Complaint.

48.     KEC and KAC re-adopt their responses to paragraphs 1 through 47 above.

49.     KEC and KAC deny the allegations of Paragraph 49 of the Complaint.

50.     KEC and KAC deny the allegations of Paragraph 50 of the Complaint.

51.     KEC and KAC deny the allegations of Paragraph 51 of the Complaint.

52.     KEC and KAC deny the allegations of Paragraph 52 of the Complaint.

53.     KEC and KAC deny the allegations of Paragraph 53 of the Complaint.

54.     KEC and KAC re-adopt their responses to Paragraphs 1 through 53 above.

55.     KEC and KAC deny the allegations of Paragraph 55 of the Complaint.

56.     KEC and KAC deny the allegations of Paragraph 56 of the Complaint.

57.     KEC and KAC deny the allegations of Paragraph 57 of the Complaint.

58.     KEC and KAC re-adopt their responses to Paragraphs 1 through 57 above.

59.     No response from KEC or KAC is required to Paragraph 59 of the Complaint, but to the extent such answer is required, KEC and KAC deny the allegations of Paragraph 59.

60.     KEC and KAC deny the allegations of Paragraph 60 of the Complaint.

61.     KEC and KAC deny the allegations of Paragraph 61 of the Complaint.

62.     KEC and KAC deny the allegations of Paragraph 62 of the Complaint.

63.     KEC and KAC deny the allegations of Paragraph 63 of the Complaint.

64.     KEC and KAC re-adopt their  responses to Paragraphs 1 through 63 above.

65.     KEC and KAC deny the allegations of Paragraph 65 and deny the allegations of Subparagraphs a, b, c, d, e, f, g, h, i, and j and specifically deny that Plaintiff is entitled to any damages or other relief whatsoever from KEC or KAC.

66.     KEC and KAC deny the allegations of the unnumbered paragraph beginning, "WHEREFORE, PREMISES CONSIDERED . . . ," and specifically deny that Plaintiff is entitled to any relief whatsoever from KEC or KAC.

## <u>CROSS-CLAIM</u>
### (JURY TRIAL REQUESTED)

HAVING FULLY answered and stated defenses to the Complaint, KEC and KAC, pursuant to Fed. R. Civ. P. 13(g), file this Cross-Claim against the Defendants BorgWarner, Inc. ("BorgWarner") and Kuhlman Corporation and would show unto the Court as follows:

## NATURE OF THE ACTION

1.     BorgWarner and Kuhlman Corporation are engaged in a concerted, illegal, bad faith course of conduct to evade a series of contractual indemnity and other legal obligations owed to KEC, KEC's parent KAC, and their Affiliates (as defined below) (collectively, "Indemnitees").  KEC seeks specific performance, damages, and other relief to (i) enforce BorgWarner's and Kuhlman Corporation's contractual and common law indemnity obligations; (ii) direct BorgWarner and Kuhlman Corporation to perform their contractual and common law obligations; (iii) redress BorgWarner's and Kuhlman Corporation's intentional misconduct towards the Indemnitees, which conduct has and continues to unnecessarily exacerbate the gravity and scale of the indemnified liability exposures; (iv) resolve several existing and continuing disputes and threatened harms caused by BorgWarner's and Kuhlman Corporation's failure to honor and perform their obligations and by their illegal and bad faith conduct; and (v) remedy  BorgWarner's and Kuhlman Corporation's bad faith, fraud, and breaches of their contractual and other duties.

2.     This case revolves around BorgWarner's and Kuhlman Corporation's broken promises to the Indemnitees and the extraordinary, bad faith manner in which BorgWarner and Kuhlman Corporation have broken those promises.

3.     BorgWarner and Kuhlman Corporation owned KEC which in turn owned a facility in Crystal Springs, Mississippi ("Crystal Springs Site" or "Site") prior to a 1999 transaction with KAC.  As an inducement for KAC to buy BorgWarner's and Kuhlman

Corporation's KEC and the Crystal Springs Site, BorgWarner and Kuhlman Corporation promised that (i) there was no environmental contamination at the Site, and (ii) if there was, BorgWarner and Kuhlman Corporation would fully protect, indemnify, and defend KAC, post-closing KEC, and their Affiliates against any resulting problems and liabilities.

4.     BorgWarner's and Kuhlman Corporation's first promise was false.  There was contamination.   Polychlorinated biphenyls ("PCBs"), chlorinated solvents and other contaminants were later "discovered" at the Crystal Springs Site.  BorgWarner and Kuhlman Corporation later characterized the contamination as "a massive ticking time bomb" that created "real health hazards."   Additionally, it was contamination that BorgWarner and Kuhlman Corporation were informed of before they made their promises.  BorgWarner even later admitted that the contamination's "discovery" came as no surprise to it.  The PCB and other discoveries led to, *inter alia*, multiple waves of toxic tort suits in Mississippi state and federal courts.  And, rather than honor their second promise, BorgWarner and Kuhlman Corporation then drove up the Indemnitees' liability exposure while also trying to erode and evade their indemnity obligations to the Indemnitees.

5.     While initially acknowledging their clear and unequivocal obligation to defend and indemnify the Indemnitees with respect to liabilities arising from the discovery of such contaminants, and purporting to incur costs on the Indemnitees' behalf in connection with that obligation, BorgWarner and Kuhlman Corporation later changed course and engaged in

a series of bad faith actions with the ultimate goal of avoiding that obligation.  To achieve their illegal goal, BorgWarner and Kuhlman Corporation, among other things, have:

a. Wrongfully denied indemnification;

b. Intentionally failed to perform their indemnity and other obligations;

c. Knowingly increased the Indemnitees' exposure with respect to the very environmental contamination that BorgWarner and Kuhlman Corporation hid at the outset, promised did not exist, and for which BorgWarner and Kuhlman Corporation owe complete indemnification;

d. Intentionally misled the Indemnitees, Mississippi PCB litigation plaintiffs, and others;

e. Reneged on multiple contracts and acted in bad faith;

f. Opportunistically terminated a joint defense arrangement with the Indemnitees;

g. Abruptly purported to "terminate" a "cooperation agreement" with the Indemnitees; and

h. Demanded indemnification from the Indemnitees for liabilities for which BorgWarner and Kuhlman Corporation have an obligation to indemnify.

6. The Indemnitees can no longer tolerate BorgWarner's and Kuhlman Corporation's willful nonperformance, abuse, and bad faith efforts to avoid their obligations. The Indemnitees seek to enforce BorgWarner's and Kuhlman Corporation's indemnity and other promises, remedy the damages BorgWarner and Kuhlman Corporation have caused, and prevent BorgWarner and Kuhlman Corporation from further damaging and injuring the Indemnitees and others.

12

## PARTIES

7.      BorgWarner acquired Kuhlman Corporation and Kuhlman Corporation's then-subsidiary KEC in a public tender offer in 1998 ("1998 Transaction").  BorgWarner and Kuhlman Corporation sold KEC to KAC in 1999.  BorgWarner is a corporation incorporated under the laws of Delaware.

8.      Kuhlman Corporation is a wholly-owned subsidiary of BorgWarner.  Kuhlman Corporation is a corporation incorporated under the laws of Delaware.

9.      KEC is a corporation incorporated under the laws of Delaware.  KEC is a wholly-owned subsidiary of KAC.

10.      KAC is a corporation incorporated under the laws of Delaware.  KAC bought BorgWarner's and Kuhlman Corporation's KEC in 1999.

## JURISDICTION AND VENUE

11.      To the extent that this Court has jurisdiction over the parties and the claims in the Complaint, this Court also has jurisdiction over this Cross-claim.  Fed. R. Civ. P. 13(g).

12.      To the extent that venue is appropriate for the claims in the Complaint, venue is also appropriate in this Court for this Cross-Claim.

## FACTUAL ALLEGATIONS

### I.    BorgWarner's and Kuhlman Corporation's Promises

13.      At least eight contracts are at issue (collectively, the "BorgWarner Contracts") as follows.

13

14.     *First*, BorgWarner and Kuhlman Corporation sold KEC to KAC pursuant to an Agreement and Plan of Merger dated August 30, 1999 ("Merger Agreement").  In the Merger Agreement:

a.     BorgWarner's and Kuhlman Corporation's KEC (pre-closing) represented and warranted to KAC and its Affiliates (as defined in Merger Agreement § 1) that, among other things, (i) there was no PCB, dioxin, furan, groundwater solvent, or other environmental contamination at the Crystal Springs Site (§ 4.12), (ii) all pre-closing environmental reports had been provided to KAC and post-closing KEC (*id.*), and (iii) there were no undisclosed liabilities at the Site (§ 4.15); and BorgWarner and Kuhlman Corporation represented and warranted that those representations and warranties were "true and complete in all material respects" (§ 5.3) – the representations and warranties related to § 4.12 survive at least five years, and those related to § 4.15 survive "in perpetuity" (§ 10.1);

b.     BorgWarner and Kuhlman Corporation promised to retain 100% responsibility for, among other things, any problems and liabilities regarding pre-closing environmental conditions and activities at the Site (including PCB and chlorinated solvent contamination), and any problems and liabilities arising out of conduct (whether or not relating to environmental matters) associated with the pre-closing business BorgWarner and Kuhlman Corporation sold to KAC;

c.     BorgWarner and Kuhlman Corporation promised to "indemnify, defend and hold [KAC], the Surviving [KEC] and [KAC's] Affiliates (and each of their respective officers, directors, employees, stockholders, partners, members, agents and representatives) harmless" with respect to the Retained Liabilities, including, among other things, any problems and liabilities regarding pre-closing environmental conditions and activities at the Site (including PCB and chlorinated solvent contamination), as well as any problems and liabilities arising out of conduct (whether or not relating to environmental matters) associated with the pre-closing business BorgWarner and Kuhlman Corporation sold to KAC – this included any pre-closing failure to provide KAC with environmental reports relating to the business (§ 11.1); and

14

d.      BorgWarner and Kuhlman Corporation promised that, if BorgWarner and Kuhlman Corporation elected to settle indemnified KEC liabilities themselves – *i.e.*, to settle indemnified third-party claims on behalf of KEC and its Affiliates – BorgWarner and Kuhlman Corporation waived any right of recoupment or other recourse that BorgWarner might have against KEC and/or its Affiliates (§ 11.4).  That is, BorgWarner and Kuhlman Corporation must "indemnify and hold [KEC and/or its Affiliates] harmless from all costs and liability arising from" indemnified third-party claims – otherwise BorgWarner cannot settle such claims on behalf of [KEC and/or its Affiliates].

15.     KAC would not have purchased KEC from BorgWarner and Kuhlman Corporation but for the representations, warranties, and indemnities provided for in the Merger Agreement.

16.     *Second* – after (as discussed in the next section) litigation and liabilities began arising from the April 2000 "discovery" of PCB contamination at the Crystal Springs Site – BorgWarner, Kuhlman Corporation, and the Indemnitees entered into a joint defense arrangement and later a Joint Defense and Confidentiality Agreement ("JDCA"), effective July 28, 2004.

17.     *Third*, on May 9, 2005, BorgWarner and Kuhlman Corporation signed a cooperation agreement with KEC and KAC ("Cooperation Agreement").  The Cooperation Agreement arose out of BorgWarner's and Kuhlman Corporation's desire to settle indemnified third-party lawsuits "on behalf of KEC" and to then sue KEC's insurers in an attempt to recover from KEC's insurers the amounts BorgWarner and Kuhlman Corporation paid "on behalf of KEC" – which is something BorgWarner and Kuhlman Corporation did

15

not have the right to do absent consent from KEC and/or KAC. In the Cooperation Agreement:

a.  BorgWarner and Kuhlman Corporation promised – in exchange for KEC and KAC permitting BorgWarner and Kuhlman Corporation to settle Mississippi PCB litigation – that "(i) the terms of such settlements [would] not impose any obligations on KEC or any of its [A]ffiliates, and (ii) the settlement agreements evidencing such settlement [would] contain a full and unconditional release of KEC and its [A]ffiliates with respect to the settled claims" (§ 1);

b.  BorgWarner and Kuhlman Corporation promised to "indemnify, defend, release and hold harmless KEC and its [A]ffiliates with respect to any claims that are the subject of such settlements and all liabilities with respect thereto and shall waive any and all claims it may have against KEC and its [A]ffiliates to recoup or otherwise recover or be reimbursed for (i) amounts paid in connection with such settlements (or any part thereof), and (ii) defense costs and related costs and expenses incurred by BorgWarner [and Kuhlman Corporation] in connection with the defense of such settled claims" (§ 4.a); and

c.  BorgWarner and Kuhlman Corporation promised – with respect to "any settlement with one or more KEC insurers regarding their duty to defend KEC in connection with Crystal Springs Lawsuits" – to "completely and permanently withdraw any reservation of rights to deny its duty to defend KEC with respect to the Crystal Springs Lawsuits . . . pursuant to the Merger Agreement, and . . . to provide to KEC a complete defense for such Crystal Springs Lawsuits" (§ 4.c). The Cooperation Agreement defines "Crystal Springs Lawsuits" as "claims brought and which may in the future be brought for damages allegedly arising from alleged PCB (and/or other) contamination at or originating from KEC's Crystal Springs, Mississippi facility."

d.  BorgWarner and Kuhlman Corporation agreed: "The existence of this [Cooperation] Agreement shall not, except as is provided in Section 4 herein, constitute a waiver of any defenses or claims of a Party against another Party. This [Cooperation] Agreement shall not be used by any non-Party to this [Cooperation] Agreement for any purpose." (§ 7.)

16

18.     BorgWarner and Kuhlman Corporation refused to settle certain indemnified third-party claims on behalf of KEC unless and until KEC and KAC signed the Cooperation Agreement.

19.     *Fourth*, in July 2005, BorgWarner, Kuhlman Corporation, and KEC entered into a settlement with KEC insurer Hartford Accident and Indemnity Company ("Hartford") in which, *inter alia*, Hartford agreed to fund a share of BorgWarner's and Kuhlman Corporation's defense costs (incurred by BorgWarner and Kuhlman Corporation pursuant to their Merger Agreement indemnity obligation) in certain tort matters related to the Crystal Springs Site.  This settlement with Hartford also permitted Hartford to accept the defense of later-filed Site-related suits, which Hartford subsequently did.  This settlement with Hartford activated BorgWarner's obligations pursuant to the Cooperation Agreement § 4.c, as described above, because it related to Hartford's duty to defend KEC in connection with Crystal Springs Lawsuits (as defined in the Cooperation Agreement).  BorgWarner's and Kuhlman Corporation's obligation to provide a complete and unqualified defense for such matters also independently arises under the Merger Agreement.

20.     *Fifth*, on August 15, 2007, John Gasparovic for BorgWarner and Kuhlman Corporation sent an indemnity reassurance letter ("First Reassurance Letter") to KAC in which BorgWarner agreed, confirmed, and promised "that the indemnification provisions set forth in [the Merger Agreement] . . . are valid and enforceable, and that BorgWarner Inc. and Kuhlman Corporation will continue, in accordance with the terms of the Merger Agreement,

17

to indemnify KEC and its [A]ffiliates."  BorgWarner and Kuhlman Corporation made this representation, in connection with a loan refinancing transaction, to induce KAC to advance a $5.5 million note payment two years earlier than the payment was due.

21.    **Sixth**, on August 16, 2007, John Gasparovic for BorgWarner and Kuhlman Corporation sent another indemnity reassurance letter ("Second Reassurance Letter") to KAC in which BorgWarner and Kuhlman Corporation agreed, confirmed, and promised it had "withdrawn [its earlier] reservation of right to deny indemnity . . . based on the claim that the indemnity obligations [under the Merger Agreement were] . . . invalid because of fraud committed against BorgWarner Inc. or Kuhlman Corporation by KEC and its [A]ffiliates prior to the effective date of the Merger Agreement."  BorgWarner made this representation to further induce the same loan refinancing transaction as the First Reassurance Letter.

22.    **Seventh**, in Spring 2010, BorgWarner and Kuhlman Corporation agreed to settle a certain portion of pending Mississippi PCB litigation on behalf of itself and KEC pursuant to a Memorandum of Understanding agreement on May 5, 2010.  Subsequently, through a Master Settlement Agreement, dated July 30, 2010 ("MSA"), BorgWarner and Kuhlman Corporation promised to pay the settlement amount on behalf of KEC as KEC's and its Affiliates' indemnitor under the Merger Agreement.  The MSA (§ 5.1) states: "BorgWarner [and Kuhlman Corporation] shall make payments of the Settlement Funds on behalf of [KEC] pursuant to the [Merger] Agreement."  This settlement activated BorgWarner's and Kuhlman Corporation's obligations and releases pursuant to the Merger

18

Agreement § 11.4 and Cooperation Agreement § 4.a, as described above.  As the settled

amounts constituted indemnified environmental liabilities under the Merger Agreement,

BorgWarner's and Kuhlman Corporation's responsibility for such amounts existed

independent of the Cooperation

Agreement.

23.     **Eighth**, on November 17, 2010, BorgWarner, Kuhlman Corporation, KEC, and

KEC's Affiliates reached a Global Settlement Agreement ("GSA") to resolve several

outstanding issues related to the above agreements and BorgWarner's and Kuhlman

Corporation's prior failure to perform their indemnity and other obligations to the

Indemnitees.

24.     All of the above contracts have an implied covenant of good faith and fair

dealing.   Under and through all of the above contracts, BorgWarner and Kuhlman

Corporation had an implied duty of good faith and fair dealing.

## II.     BorgWarner and Kuhlman Corporation Broke Their Representations and Warranties

25.     The business BorgWarner and Kuhlman Corporation sold to KAC used PCBs

between approximately 1953 and 1976 and used chlorinated solvents until approximately

1992.   As a consequence and contrary to BorgWarner's and Kuhlman Corporation's

representations and warranties in the 1999 Merger Agreement, the Crystal Springs Site had

PCB, chlorinated solvent, and other environmental contamination.  KAC and post-closing

KEC discovered the PCB contamination in 2000 and other contamination thereafter.

26.     Beyond whatever knowledge of PCB contamination Kuhlman Corporation had

from its ownership of the Crystal Springs Site prior to the 1998 Transaction, BorgWarner

was *itself* independently informed – prior to making the representations and warranties to

KAC in the Merger Agreement – that the Site was contaminated with PCBs.  Back before

the sale to KAC, however, BorgWarner and Kuhlman Corporation never told KAC or post-

closing KEC anything of the sort.   In the sale to KAC, BorgWarner and Kuhlman

Corporation said the opposite – BorgWarner and Kuhlman Corporation represented that there

was no such contamination.  KAC, post-closing KEC, and their Affiliates did not learn that

BorgWarner had been informed of the PCB contamination before BorgWarner signed the

Merger Agreement until 2008 (and only then in a lawsuit).

27.     The BorgWarner executive who was responsible for defining the

environmental liabilities for the 1998 Transaction later testified that the PCB contamination

that BorgWarner had been told about came as "no" "surprise" to BorgWarner.  KAC, post-

closing KEC, and their Affiliates did not learn of BorgWarner's lack of surprise until 2009

(and only then in a lawsuit).

28.     Additionally, KAC and post-closing KEC were informed in 2004 of an

environmental report, subject to the attorney client and attorney work product privileges, that

documented soil sampling results at the Crystal Springs Site in 1988 ("1988 Report").  It too

was not disclosed to KAC, post-closing KEC, and their Affiliates prior to the consummation of the Merger Agreement.

### III.   Indemnified Claims for Which BorgWarner and Kuhlman Corporation Are Responsible

29.   In 2000, KEC and KAC promptly notified BorgWarner and Kuhlman Corporation of the PCB contamination discovery and requested the indemnity and defense promised under the Merger Agreement.  BorgWarner and Kuhlman Corporation "confirmed to KEC that BorgWarner and Kuhlman [Corporation] would honor any claim for indemnification for environmental issues which arose from Pre-Closing contamination of the KEC premises."  (BorgWarner and Kuhlman Corporation so admitted in a complaint filed against KEC in 2000 regarding post-closing activity which BorgWarner and Kuhlman Corporation later voluntarily dismissed.)

30.   BorgWarner and Kuhlman Corporation became and/or are obligated – pursuant to the Merger Agreement, Cooperation Agreement, MSA, GSA, and/or otherwise – to, *inter alia*, indemnify, defend, and hold harmless the Indemnitees for, *inter alia*, the claims in the Complaint filed by the City of Crystal Springs, Mississippi (the "City").

### IV.   BorgWarner and Kuhlman Corporation Broke, Reneged, and Breached – and Are Breaking, Reneging, and Breaching – Their Promises to Indemnify, Defend, and Hold Harmless

31.   Despite earlier recognition and acknowledgement of their indemnity obligations, BorgWarner and Kuhlman Corporation have failed to comply with, denied, breached, and undermined their obligations under the Merger Agreement and subsequent

agreements to indemnify, defend, and hold the Indemnitees harmless. Rather than protecting the Indemnitees from the environmental problems that BorgWarner and Kuhlman Corporation promised did not exist, BorgWarner and Kuhlman Corporation have engaged in a course of conduct designed systematically to avoid their indemnity obligations, increase the Indemnitees' liability exposure, breach BorgWarner's and Kuhlman Corporation's agreements, engage in misconduct and bad faith to, among other things, gain wrongful advantage and leverage over the Indemnitees, and other wrongful conduct, all to deny the Indemnitees the benefits and protections of the provisions in, and/or other fruits of, the Merger Agreement and other BorgWarner Contracts. BorgWarner and Kuhlman Corporation have failed to honor their covenant of good faith and fair dealing and/or defrauded the Indemnitees. BorgWarner and Kuhlman Corporation have repeatedly failed and refused to fulfill their duties under the Merger Agreement and subsequent agreements by, among other things, (i) reneging on their promises to indemnify and protect the Indemnitees, (ii) failing to pay and/or reimburse indemnity and defense costs, (iii) seeking to recoup indemnity payments, and (iv) seeking to condition mere partial performance of their obligations on the Indemnitees' agreement to surrender important legal rights and privileges.

**A.      Inducing and Breaching the GSA.**

32.      In 2010, BorgWarner, Kuhlman Corporation, KEC, and KEC's Affiliates were in broader negotiations to resolve an array of indemnity and related disputes stemming from

BorgWarner's and Kuhlman Corporation's nonperformance under the Merger Agreement and related agreements.

33.     By November 2010, the parties had reached an agreement.  On November 17, 2010, Mr. Gasparovic for BorgWarner and Kuhlman Corporation met with KEC's counsel E.B. Lyon and Robert Profusek in New York, New York.  In person, Messrs. Gasparovic, Lyon, and Profusek finalized the oral GSA.  Continuing their now-common pattern of nonperformance and bad faith, BorgWarner's and Kuhlman Corporation's subsequent actions demonstrate that BorgWarner and Kuhlman Corporation will not honor the GSA in any respect.

34.     Despite agreeing in the GSA to live up to their indemnity and other obligations to the Indemnitees, BorgWarner and Kuhlman Corporation brazenly took bad faith steps in the opposite direction in the second half of 2011 and early 2012, willfully breaching their obligations several times over as detailed below.

**B.     Pulling Out of the JDCA.**

35.     In October 2011, BorgWarner and Kuhlman Corporation informed the Indemnitees that BorgWarner and Kuhlman Corporation would no longer participate in the JDCA.

**C.     Flipping the City's Claims On Their Head**.

23

36.     In 2011, counsel purporting to represent the City indicated its intention to file an action alleging property damage from PCB and other contamination at and from the Site.

37.     In November 2011, BorgWarner and Kuhlman Corporation flipped their indemnity obligations for the City's claims on their head.  Not only have BorgWarner and Kuhlman Corporation wrongfully asserted that they have no duty to indemnify the Indemnitees for the City's claims, but BorgWarner and Kuhlman Corporation demand that KEC and KAC *indemnify BorgWarner and Kuhlman Corporation* – indemnify BorgWarner and Kuhlman Corporation for claims based on PCB and other environmental contamination that BorgWarner and Kuhlman Corporation promised did not even exist and which BorgWarner and Kuhlman Corporation hid.

38.     As a threshold matter, BorgWarner and Kuhlman Corporation are breaching their indemnity obligations to the Indemnitees to the extent they are denying indemnification on the City's claims.  These claims are covered by BorgWarner's and Kuhlman Corporation's indemnity obligations, and BorgWarner's and Kuhlman Corporation's refusal to indemnify is yet another breach.  To be clear, BorgWarner and Kuhlman Corporation are being sued in this action for their own misconduct, and that KEC and KAC are being sued, in part, for BorgWarner's and Kuhlman Corporation's actions during twelve years of the remediation – and KEC and KAC are cross-claiming for, inter alia, the harm caused by BorgWarner and Kuhlman Corporation thereby.

39.     As to BorgWarner's and Kuhlman Corporation's indemnification demand,

24

KEC and KAC have no such duty to indemnify BorgWarner and Kuhlman Corporation for the City's claims.  The City's Complaint arises from pre-closing environmental conditions and activities at the Crystal Springs Site and thus presents liabilities for which BorgWarner and Kuhlman Corporation retained 100% responsibility – not the other way around as BorgWarner and Kuhlman Corporation would now have it.  BorgWarner and Kuhlman Corporation demanding indemnification from KEC and KAC is just one example of the gamesmanship BorgWarner and Kuhlman Corporation have wrongfully injected into this indemnitor-indemnitee relationship and constitutes a bad faith violation of BorgWarner's and Kuhlman Corporation's duties to the Indemnitees causing further damage and harm.  (To the extent BorgWarner and Kuhlman Corporation now seek indemnity from KEC and KAC, BorgWarner and Kuhlman Corporation owe the exact duty of cooperation to KEC and KAC as alleged indemnitors that BorgWarner and Kuhlman Corporation have claimed elsewhere that KEC and KAC owe BorgWarner and Kuhlman Corporation as indemnitors.)

**D.    Purporting To "Terminate" the Cooperation Agreement.**

40.    BorgWarner and Kuhlman Corporation have also declared that they "terminated" the Cooperation Agreement.  On November 30, 2011, BorgWarner and Kuhlman Corporation wrote to KEC stating that "the Cooperation Agreement now has been terminated."  BorgWarner's and Kuhlman Corporation's purported termination is further evidence of their bad faith and has caused further damage to the Indemnitees.

## COUNT I

### Breach of Contract – Merger Agreement

41.     KEC and KAC allege and incorporate by reference each paragraph above in these Cross-Claims as if fully set forth herein.

42.     The Merger Agreement is a valid and enforceable contract.

43.     KEC and KAC have complied with and performed all of their obligations under the Merger Agreement and are prepared to continue to perform all of their obligations under the Merger Agreement.

44.     By and through BorgWarner's and Kuhlman Corporation's actions, omissions, and/or conduct, BorgWarner and Kuhlman Corporation have breached and/or are breaching the Merger Agreement (both its express terms and its implied covenant of good faith and fair dealing).

45.     As a direct result of BorgWarner's and Kuhlman Corporation's breach of the Merger Agreement, BorgWarner and Kuhlman Corporation have caused, are causing, and/or will cause KEC and KAC to suffer damages and/or irreparable injury.

## COUNT II

### Breach of Contract – JDCA

46.     KEC and KAC allege and incorporate by reference each paragraph above in these Cross-Claims as if fully set forth herein.

47.     The JDCA was a valid and enforceable contract.

26

48.     KEC and KAC complied with and performed all of their obligations under and/or in accord with the JDCA.

49.     By and through BorgWarner's and Kuhlman Corporation's actions, omissions, and/or conduct otherwise, BorgWarner and Kuhlman Corporation breached the JDCA (both its express terms and its implied covenant of good faith and fair dealing).

50.     As a direct result of BorgWarner's and Kuhlman Corporation's breach of the JDCA, BorgWarner and Kuhlman Corporation caused, are causing, and/or will cause KEC and KAC to suffer damages and/or irreparable injury.

## COUNT III

### Breach of Contract – Cooperation Agreement

51.     KEC and KAC allege and incorporate by reference each paragraph above in these Cross-Claims as if fully set forth herein.

52.     The Cooperation Agreement is a valid and enforceable contract.

53.     KEC and KAC have complied with and performed all of their obligations under the Cooperation Agreement and are prepared to continue to perform all of their obligations under the Cooperation Agreement.

54.     By and through BorgWarner's and Kuhlman Corporation's actions, omissions, and/or conduct, BorgWarner and Kuhlman Corporation have breached and/or are breaching the Cooperation Agreement (both its express terms and its implied covenant of good faith and fair dealing).

55. As a direct result of BorgWarner's and Kuhlman Corporation's breach of the Cooperation Agreement, BorgWarner and Kuhlman Corporation have caused, are causing, and/or will cause KEC and KAC to suffer damages and/or irreparable injury.

## COUNT IV

### Breach of Contract – First Reassurance Letter

56. KEC and KAC allege and incorporate by reference each paragraph above in these Cross-Claims as if fully set forth herein.

57. The First Reassurance Letter is a valid and enforceable contract.

58. KEC and KAC have complied with and performed all of their obligations under and/or in accord with the First Reassurance Letter and are prepared to continue to perform all of their obligations under and/or in accord with the First Reassurance Letter.

59. By and through BorgWarner's and Kuhlman Corporation's actions, omissions, and/or conduct, BorgWarner and Kuhlman Corporation have breached and/or are breaching the First Reassurance Letter (both its express terms and its implied covenant of good faith and fair dealing).

60. As a direct result of BorgWarner's and Kuhlman Corporation's breach of the First Reassurance Letter, BorgWarner and Kuhlman Corporation have caused, are causing, and/or will cause KEC and KAC to suffer damages and/or irreparable injury.

## COUNT V

### Breach of Contract – Second Reassurance Letter

61.     KEC and KAC allege and incorporate by reference each paragraph above in these Cross-Claims as if fully set forth herein.

62.     The Second Reassurance Letter is a valid and enforceable contract.

63.     KEC and KAC have complied with and performed all of their obligations under and/or in accord with the Second Reassurance Letter and are prepared to continue to perform all of their obligations under and/or in accord with the Second Reassurance Letter.

64.     By and through BorgWarner's and Kuhlman Corporation's actions, omissions, and/or conduct, BorgWarner and Kuhlman Corporation have breached and/or are breaching the Second Reassurance Letter (both its express terms and its implied covenant of good faith and fair dealing).

65.     As a direct result of BorgWarner's and Kuhlman Corporation's breach of the Second Reassurance Letter, BorgWarner and Kuhlman Corporation have caused, are causing, and/or will cause KEC and KAC to suffer damages and/or irreparable injury.

## COUNT VI

### Breach of Contract – MSA

66.     KEC and KAC allege and incorporate by reference each paragraph above in these Cross-Claims as if fully set forth herein.

67.     The MSA is a valid and enforceable contract.

68.     KEC and KAC have complied with and performed all of their obligations under the MSA and are prepared to continue to perform all of their obligations under the MSA.

69.     By and through BorgWarner's and Kuhlman Corporation's actions, omissions, and/or conduct, BorgWarner and Kuhlman Corporation have breached and/or are breaching the MSA (both its express terms and its implied covenant of good faith and fair dealing).

70.     As a direct result of BorgWarner's and Kuhlman Corporation's breach of the MSA, BorgWarner and Kuhlman Corporation have caused, are causing, and/or will cause KEC and KAC to suffer damages and/or irreparable injury.

## COUNT VII

### Breach of Contract – GSA

71.     KEC and KAC allege and incorporate by reference each paragraph above in these Cross-Claims as if fully set forth herein.

72.     The GSA is a valid and enforceable contract.

73.     KEC and KAC have complied with and performed all of their obligations under the GSA and are prepared to continue to perform all of their obligations under the GSA.

74.     By and through BorgWarner's and Kuhlman Corporation's actions, omissions, and/or conduct, BorgWarner and Kuhlman Corporation have breached and/or are breaching the GSA (both its express terms and its implied covenant of good faith and fair dealing).

75.     As a direct result of BorgWarner's and Kuhlman Corporation's breach of the GSA, BorgWarner and Kuhlman Corporation have caused, are causing, and/or will cause

KEC and KAC to suffer damages and/or irreparable injury.

## COUNT VIII

### Specific Performance – Merger Agreement

76.     KEC and KAC allege and incorporate by reference each paragraph above in these Cross-Claims as if fully set forth herein.

77.     Under the Merger Agreement, BorgWarner and Kuhlman Corporation have certain obligations, including, without limitation, BorgWarner's and Kuhlman Corporation's contractual obligation to defend and indemnify KEC and KAC for certain of pre-acquisition environmental liabilities, which include, without limitation, the claims in the City's Complaint.

78.     Without justification, BorgWarner and Kuhlman Corporation have disputed, denied, contested, rejected, partially performed, avoided performing, diminished, eroded, and/or limited those obligations.   Among other things, BorgWarner and Kuhlman Corporation have displayed an unequivocal intent to refuse to perform their obligations under the Merger Agreement by refusing to defend or indemnify KEC and KAC in connection with the City's Complaint, notwithstanding BorgWarner's and Kuhlman Corporation's obligations to do so under the Merger Agreement.

79.     KEC and KAC have no adequate remedy at law to compensate them completely, practically, efficiently, and/or justly for the resulting loss of the benefits conferred and the protections put in place by the imposition of those obligations on

31

BorgWarner and Kuhlman Corporation.  Specific performance is the only means to make KEC and KAC whole and prevent irreparable injury.  Additionally, KEC and KAC have no adequate remedy at law to address and deal with BorgWarner and Kuhlman Corporation disputing, denying, contesting, rejecting, partially performing, avoiding performing, diminishing, eroding, and/or limiting those obligations short of bringing a legal action each and every time BorgWarner and Kuhlman Corporation engage in such conduct and/or fail to fully perform those obligations.  Specific performance would entirely or in large part eliminate the need for a multiplicity of suits and/or would promptly, practically, and justly resolve the ongoing dispute over those obligations.

80.    KEC and KAC have fulfilled and are prepared to continue to fulfill all of their obligations under the Merger Agreement.

81.    KEC and KAC respectfully request an order and/or decree of specific performance of this Court requiring BorgWarner and Kuhlman Corporation (i) to no longer dispute, deny, contest, reject, partially perform, avoid performing, diminish, erode, and/or limit BorgWarner's and Kuhlman Corporation's obligations under the Merger Agreement to indemnify, defend, and hold harmless KEC, KAC, and their Affiliates; (ii) to no longer attempt or seek to dispute, deny, contest, reject, partially perform, avoid performing, diminish, erode, and/or limit BorgWarner's and Kuhlman Corporation's obligations under the Merger Agreement to indemnify, defend, and hold harmless KEC, KAC, and their Affiliates; and (iii) to perform without limitation BorgWarner's and Kuhlman Corporation's

obligations under the Merger Agreement to (a) indemnify, defend, and hold harmless KEC, KAC, and their Affiliates with respect to the claims in the City's Complaint regarding pre-closing environmental conditions and activities of the pre-closing KEC business BorgWarner and Kuhlman Corporation sold to KAC as well as problems and liabilities arising out of conduct (whether or not relating to environmental matters) associated with the pre-closing KEC business and (b) waive any and all claims BorgWarner and Kuhlman Corporation may have against KEC, KAC, and their Affiliates to recoup or otherwise recover or be reimbursed for (I) amounts paid in connection with settlements of any claims in the City's Complaint (or any part thereof) under or pursuant to the Merger Agreement and (II) defense costs and related costs and expenses incurred by BorgWarner and Kuhlman Corporation in connection with the defense of such settled claims.

### COUNT IX

**Specific Performance – Cooperation Agreement**

82,    KEC and KAC allege and incorporate by reference each paragraph above in these Cross-Claims as if fully set forth herein.

83.    Under the Cooperation Agreement, BorgWarner and Kuhlman Corporation have certain obligations.

84.    Without justification, BorgWarner and Kuhlman Corporation have disputed, denied, contested, rejected, partially performed, avoided performing, diminished, eroded, and/or limited those obligations.

85.   KEC and KAC have no adequate remedy at law and repeat and incorporate by reference Paragraph 79 of these Cross-Claims as if fully set forth here.

86.   KEC and KAC have fulfilled and are prepared to continue to fulfill all of their obligations under the Cooperation Agreement.

87.   KEC and KAC respectfully request an order and/or decree of specific performance of this Court requiring BorgWarner and Kuhlman Corporation (i) to no longer dispute, deny, contest, reject, partially perform, avoid performing, diminish, erode, and/or limit BorgWarner's and Kuhlman Corporation's obligations under the Cooperation Agreement; (ii) to no longer attempt or seek to dispute, deny, contest, reject, partially perform, avoid performing, diminish, erode, and/or limit BorgWarner's and Kuhlman Corporation's obligations under the Cooperation Agreement; and (iii) to perform without limitation BorgWarner's and Kuhlman Corporation's obligations under the Cooperation Agreement to indemnify, defend, and hold harmless KEC, KAC, and their Affiliates with respect to BorgWarner's and Kuhlman Corporation's duty to (a) indemnify, defend, release, and hold harmless KEC, KAC, and their Affiliates with respect to any settlements by BorgWarner and Kuhlman Corporation on behalf of KEC, KAC, and their Affiliates of any claims in the City's Complaint, (b) waive any and all claims BorgWarner and Kuhlman Corporation may have against KEC, KAC, and their Affiliates to recoup or otherwise recover or be reimbursed for (I) amounts paid in connection with settlements of any claims in the City's Complaint (or any part thereof) and (II) defense costs and related costs and expenses

34

incurred by BorgWarner and Kuhlman Corporation in connection with the defense of such settled claims, and (c) fully defend KEC, KAC, and their Affiliates with respect to any of the claims in the City's Complaint for which any KEC insurer has accepted any defense obligation pursuant to a settlement agreement with such insurer.

## COUNT X

### Specific Performance – MSA

88.     KEC and KAC allege and incorporate by reference each paragraph above in these Cross-Claims as if fully set forth herein.

89.     Under the MSA, BorgWarner and Kuhlman Corporation have certain obligations.

90.     Without justification, BorgWarner and Kuhlman Corporation have disputed, denied, contested, rejected, partially performed, avoided performing, diminished, eroded, and/or limited those obligations.

91.     KEC and KAC have no adequate remedy at law and repeat and incorporate by reference Paragraph 79 of these Cross-Claims as if fully set forth here.

92.     KEC and KAC have fulfilled and are prepared to continue to fulfill all of their obligations under the MSA.

93.     KEC and KAC respectfully request an order and/or decree of specific performance of this Court requiring BorgWarner and Kuhlman Corporation (i) to no longer dispute, deny, contest, reject, partially perform, avoid performing, diminish, erode, and/or

35

limit BorgWarner's and Kuhlman Corporation's obligations under the MSA, (ii) to no longer attempt or seek to dispute, deny, contest, reject, partially perform, avoid performing, diminish, erode, and/or limit BorgWarner's and Kuhlman Corporation's obligations under the MSA, and (iii) to perform without limitation BorgWarner's and Kuhlman Corporation's obligations under the MSA to indemnify KEC, KAC, and their Affiliates for all settlement funds to be paid under the MSA as the indemnitor of KEC, KAC, and their Affiliates under the Merger Agreement.

## COUNT XI

### Declaratory Relief – Merger Agreement

94.    KEC and KAC allege and incorporate by reference each paragraph above in these Cross-Claims as if fully set forth herein.

95.    Under the Merger Agreement, BorgWarner and Kuhlman Corporation have obligations to indemnify, defend, and hold harmless KEC, KAC, and their Affiliates for the claims in the City's Complaint.  Further, KEC, KAC, and their Affiliates have no obligation to indemnify, defend, and hold harmless BorgWarner and Kuhlman Corporation for the claims in the City's Complaint.

96.    BorgWarner and Kuhlman Corporation contend to the contrary and/or have refused and/or failed to perform their obligations.

97.    An actual controversy exists between the parties sufficient for this Court to issue declaratory relief and declare the rights and obligations of the parties under the Merger

Agreement.  Declaratory relief is an appropriate means of resolving this controversy.

98.     KEC and KAC respectfully request declaratory relief in the form of an order and/or judgment of this Court declaring that, under the Merger Agreement, BorgWarner and Kuhlman Corporation must indemnify, defend, and hold harmless KEC, KAC, and their Affiliates, without limitation and for all costs, damages, punitive damages, and other amounts and remedies with respect to the claims in the City's Complaint.  KEC and KAC also respectfully request declaratory relief in the form of an order and/or judgment of this Court declaring that, under the Merger Agreement, that BorgWarner and Kuhlman Corporation waive any and all claims BorgWarner and Kuhlman Corporation may have against KEC, KAC, and their Affiliates to recoup or otherwise recover or be reimbursed for (a) amounts paid in connection with settlements of the claims in the City's Complaint (or any part thereof) under or pursuant to the Merger Agreement and (b) defense costs and related costs and expenses incurred by BorgWarner and Kuhlman Corporation in connection with the defense of such settled claims.  KEC and KAC also respectfully requests declaratory relief in the form of an order and/or judgment of this Court declaring that KEC, KAC, and their Affiliates have no obligation to indemnify, defend, and hold harmless BorgWarner and Kuhlman Corporation for the claims in the City's Complaint.

### COUNT XII

### Declaratory Relief – Cooperation Agreement

99.     KEC and KAC allege and incorporate by reference each paragraph above in

these Cross-Claims as if fully set forth herein.

100.    Under the Cooperation Agreement, BorgWarner and Kuhlman Corporation have certain obligations.

101.    BorgWarner and Kuhlman Corporation contend to the contrary and/or have refused and/or failed to perform those obligations.

102.    An actual controversy exists between the parties sufficient for this Court to issue declaratory relief and declare the rights and obligations of the parties under the Cooperation Agreement.   Declaratory relief is an appropriate means of resolving this controversy.

103.    KEC and KAC respectfully request declaratory relief in the form of an order and/or judgment of this Court declaring that, under the Cooperation Agreement, BorgWarner and Kuhlman Corporation must, without limitation, (i) indemnify, defend, release, and hold harmless KEC, KAC, and their Affiliates with respect to any settlements by BorgWarner and Kuhlman Corporation on behalf of KEC, KAC, and their Affiliates of claims in the City's Complaint, (ii) waive any and all claims BorgWarner and Kuhlman Corporation may have against KEC, KAC, and their Affiliates to recoup or otherwise recover or be reimbursed for (a) amounts paid in connection with such settlements (or any part thereof) and (b) defense costs and related costs and expenses incurred by BorgWarner and Kuhlman Corporation in connection with the defense of such settled claims, and (iii) fully defend KEC, KAC, and their Affiliates with respect to the claims in the City's Complaint for which any KEC insurer

has accepted any defense obligation pursuant to a settlement agreement with such insurer.

## COUNT XIII

### Declaratory Relief – MSA

104.     KEC and KAC allege and incorporate by reference each paragraph above in these Cross-Claims as if fully set forth herein.

105.     Under the MSA, BorgWarner and Kuhlman Corporation have obligations to indemnify KEC, KAC, and their Affiliates for all settlement funds to be paid under the MSA.

106.     BorgWarner and Kuhlman Corporation contend to the contrary and/or have refused and/or failed to perform those obligations.

107.     An actual controversy exists between the parties sufficient for this Court to issue declaratory relief and declare the rights and obligations of the parties under the MSA. Declaratory relief is an appropriate means of resolving this controversy.

108.     KEC and KAC respectfully request declaratory relief in the form of an order and/or judgment of this Court declaring that, under the MSA, BorgWarner and Kuhlman Corporation must – without limitation and without any right of recoupment or other recovery – indemnify KEC, KAC, and their Affiliates for all settlement funds paid under the MSA.

## COUNT XIV

### Declaratory Relief – Common Law Indemnification

109.     KEC and KAC allege and incorporate by reference each paragraph above in these Cross-Claims as if fully set forth herein.

110. Through the City's Complaint, KEC, KAC, and their Affiliates have incurred legal fees and costs.

111. KEC, KAC, and their Affiliates did not actively or affirmatively participate in the wrong alleged in the City's Complaint.

112. Under the common law, BorgWarner and Kuhlman Corporation thus have, *inter alia*, obligations to indemnify KEC, KAC, and their Affiliates for legal fees and costs and any future settlement payments made for claims in the City's Complaint.

113. BorgWarner and Kuhlman Corporation contend to the contrary.

114. An actual controversy exists between the parties sufficient for this Court to issue declaratory relief and declare the rights and obligations of the parties regarding BorgWarner's and Kuhlman Corporation's common law obligations to indemnify KEC, KAC, and their Affiliates for all damages, fees and costs paid in this action.

115. KEC and KAC respectfully request declaratory relief in the form of an order and/or judgment of this Court declaring that, under the common law, BorgWarner and Kuhlman Corporation must indemnify and pay KEC, KAC, and their Affiliates without limitation and for all such reasonable costs, damages, punitive damages, and other amounts that KEC, KAC, and their Affiliates are compelled to pay to the City in this action.

## COUNT XV

## Fraud

116. KEC and KAC allege and incorporate by reference each paragraph above in

these Cross-Claims as if fully set forth herein.

117.   BorgWarner and Kuhlman Corporation have made false representations and/or

omissions of material fact, including, *inter alia*:

a.   BorgWarner's and Kuhlman Corporation's representations (i) that there was no PCB and/or other contamination at the Site and (ii) regarding its employees knowledge of the same;

b.   BorgWarner's and Kuhlman Corporation's representations (i) that there were no undisclosed liabilities at the Site and (ii) regarding its employees knowledge of the same;

c.   BorgWarner's and Kuhlman Corporation's representations that all pre-closing environmental reports had been provided to KAC;

d.   BorgWarner's and Kuhlman Corporation's representations that BorgWarner and Kuhlman Corporation would honor the valid and enforceable indemnification provisions set forth in the Merger Agreement;

e.   BorgWarner's and Kuhlman Corporation's representations that BorgWarner and Kuhlman Corporation would indemnify, defend, and hold harmless KEC, KAC, and their Affiliates;

f.   BorgWarner's and Kuhlman Corporation's representations that BorgWarner and Kuhlman Corporation desired global settlement agreement;

g.   BorgWarner's and Kuhlman Corporation's representations that BorgWarner and Kuhlman Corporation would pay all settlement amounts under the MSA and not seek recoupment from KEC, KAC, and their Affiliates for such amounts.

Additionally, BorgWarner and Kuhlman Corporation deliberately concealed material facts

regarding the same.

118.   By and through BorgWarner's and Kuhlman Corporation's actions, omissions,

41

and/or conduct detailed above, BorgWarner and Kuhlman Corporation had knowledge and/or belief that (i) the representations and/or omissions were false when made or made representations with reckless or requisite indifference to the truth and/or (ii) its concealments were false in nature and/or were done with reckless or requisite indifference to the truth.

119.    BorgWarner and Kuhlman Corporation made the representations and/or omissions and/or concealed material facts to induce KEC and KAC to act or refrain from acting.

120.    KEC and KAC acted and/or refrained from acting in justifiable reliance on the representations, omissions, and/or concealments.

121.    KEC and KAC have suffered damages as a result of such reliance caused by BorgWarner and Kuhlman Corporation.

## COUNT XVI

### Punitive Damages

122.    The conduct of BorgWarner and Kuhlman Corporation described in this Cross-Claim constitutes actual fraud and actions taken with wrongful intent and demonstrate a willful, wanton and grossly negligent disregard for the rights of others, and for the safety of others.  KEC and KAC are entitled to recover punitive damages.

WHEREFORE, PREMISES CONSIDERED, KEC and KAC demand as follows:

h.      that they be awarded damages proximately caused by the wrongful conduct of

BorgWarner and Kuhlman Corporation, including damages for breach of the Merger Agreement, breach of the Joint Defense and Confidentiality Agreement, breach of the Cooperation Agreement, breach of the First and Second Reassurance Letters, breach of the Master Settlement Agreement and breach of the November 17, 2010, Global Settlement Agreement;

      i.     that they be awarded specific performance against BorgWarner and Kuhlman Corporation to enforce the terms and conditions of the Merger Agreement, the Cooperation Agreement, the Master Settlement Agreement and that BorgWarner and Kuhlman Corporation be enjoined by the Court to perform their obligations pursuant to the agreements, as more fully described in Paragraphs 81, 87 and 93 of this Cross-Claim;

      j.     that the Court grant declaratory relief adjudicating that BorgWarner and Kuhlman Corporation have indemnity and other duties pursuant to the merger agreement, the Cooperation Agreement and the Master Settlement Agreement, as more fully described in Paragraphs 98, 103 and 108 of this Cross-Claim; and that BorgWarner and Kuhlman Corporation are legally obligated to indemnify KEC and KAC for all damages, costs and other amounts whatsoever, including attorney fees, for which they may be found liable to the City of Crystal Springs in this proceeding;

      k.     that they be awarded damages against BorgWarner and Kuhlman Corporation for any and all damages costs and other amounts whatsoever, including attorney fees, for which they may be found liable to the City of Crystal Springs in this proceeding;

l.      that they be awarded damages against BorgWarner and Kuhlman Corporation proximately caused by their fraudulent conduct as described in Paragraphs 116 through 121 of this Cross-Claim;

m.      that KEC and KAC be awarded punitive damages against BorgWarner and Kuhlman Corporation;

n.      that KEC and KAC be awarded all costs of this proceeding, including attorneys' fees, prejudgment interest and post-judgment interest; and

o.      that KEC and KAC be awarded such other relief as the Court deems just and proper.

DATED:      September 21, 2012

Respectfully submitted,
KUHLMAN ELECTRIC CORPORATION
and KEC ACQUISITION CORPORATION
By and through their attorneys


_____*/s/ Kathy K. Smith*_____
Kathy K. Smith (MSB #10350)

44

OF COUNSEL:

John G. Corlew (MSB #6526)
Virginia T. Munford (MSB #3654)
Kathy K. Smith (MSB # 10350)
CORLEW MUNFORD & SMITH PLLC
4450 Old Canton Road, Suite 111 (39211)
Post Office Box 16807
Jackson, MS   39236-6807
Phone: 601-366-1106
Fax: 601-366-1052
jcorlew@cmslawyers.com
vmunford@cmslawyers.com
ksmith@cmslawyers.com


Thomas J. Heiden (to be admitted *pro hac vice*)
Mary Rose Alexander (to be admitted *pro hac vice*)
LATHAM & WATKINS LLC
Sears Tower, Suite 5800
Chicago, Illinois 60606
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
thomas.heiden@lw.com
mary.rose.alexander@lw.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2012, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

**Winston James Thompson, III**
wjt3law@yahoo.com; fgraham@cochranfirm.com; gslater@cochranfirm.com

**Daniel W. Kitchens**
dkitchens@kitchenslaw.net; sbarlow@kitchenslaw.net;
ssummers@kitchenslaw.net

**John Wimberly Kitchens**
jkitchens@kitchenslaw.net; sbarlow@kitchenslaw.net;
ssummers@kitchenslaw.net

**Matthew W. Kitchens**
mkitchens@kitchenslaw.net; ldaniels@kitchenslaw.net;
sbarlow@kitchenslaw.net; ssummers@kitchenslaw.net

**James W. Shelson**
shelsonj@phelps.com; ezellt@phelps.com

**Reuben V. Anderson**
reuben.anderson@phelps.com; wilsonf@phelps.com

**Robert Gregg Mayer**
mayerg@phelps.com; shannon.king@phelps.com

**Katherine K. Smith**
ksmith@cmslawyers.com; aprisock@cmslawyers.com

and I hereby certify that I have mailed by United States Postal Service the document to the following

non-ECF participants:

None.

_/s/ Kathy K. Smith_
KATHERINE K. SMITH

46